# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANNETTE LEIZAN-RIVERA et al., | |
| Plaintiffs, | |
| v. | CIVIL NO.: 15-3112 (MEL) |
| CAPITOL SECURITY POLICE, INC. et al., | |
| Defendants. | |

## OPINION AND ORDER

This case was brought pursuant to the court's diversity jurisdiction under Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141, et seq. In their amended complaint Annette Leizan-Rivera and Paolo Marra-Marra, individually and on behalf of their minor children G.M.L. and S.M.L., as well as Manuel Leizan-González and Rosalinda Rivera-Montalvo (collectively "Plaintiffs") seek redress of damages they suffered from a home burglary in the Caldas community. They allege that the break in they suffered was the result of negligence on the part of Capitol Security Police, Inc. ("Capitol Security"), the Homeowners Association of Urbanización Caldas, Inc., ("the Homeowners Association"), the Council of Owners of Urbanización Caldas ("the Council of Owners"), QBE Insurance Group of Puerto Rico, Inc., QBE Seguros, and unnamed defendants (collectively "Defendants"). Pending before the court is a motion for judgment on the pleadings by defendant Capitol Security and a motion joining and adopting the motion for judgment on the pleadings by defendants Homeowners Association and Council of Owners. ECF Nos. 57; 58. In the pending motion for judgment on the pleadings, Capitol Security contends that the case must be dismissed because the complaint contains neither factual allegations to establish any negligent act or omission by Capitol Security, nor factual

allegations that establish a causal relationship between any negligent conduct on the part of Capitol Security and the damages allegedly suffered by Plaintiffs. ECF No. 57. The Homeowners Association and the Council of Owners make the same arguments in their motion joining and adopting motion for judgment on the pleadings. ECF No. 58. Plaintiffs filed a response in opposition to these motions. ECF No. 61. Capitol Security filed a reply to the response in opposition. ECF No. 68. The Homeowners Association and the Council of Owners joined and adopted Capitol Security's reply to the response in opposition. ECF No. 69. For the reasons that follow, Capitol Security's motion for judgment on the pleadings is granted, and Homeowners Association and the Council of Owners motion joining and adopting Capitol Security's motion for judgment on the pleadings is granted.

## I.   FACTUAL ALLEGATIONS[1]

At approximately 5:00 am on August 11, 2015, two unnamed and unidentified assailants broke into the house of Manuel Leizan-González and Rosalinda Rivera-Montalvo (hereafter "the House") in the gated residential community of Caldas. At the time of the assailant's arrival to the House, Manuel and Rosalinda were sleeping in the House, as was their daughter Annette Leizan-Rivera and her minor children G.M.L. and S.M.L.

Nine year old G.M.L. woke to hearing strange noises outside her bedroom, and observed two unknown men enter a window on the third floor of the House. When she heard the assailant's footsteps nearing her bedroom, G.M.L. ran to her door and locked the handle. She watched the shadows of their feet as the assailants tried to force her door open, before they moved on to her mother's bedroom, who was sleeping by herself. Annette woke up when one of the men jumped on top of her and shoved a dirty sock into her mouth. As she remained restrained, the assailant

---

[1] For the purposes of this motion for judgment on the pleadings, facts are stated as alleged by the Plaintiffs in the amended complaint. ECF No. 20.

2

threatened to kill her if she made a noise and groped her body for approximately two minutes. Annette was eventually able to force the assailant off her. From what Annette could observe, the two assailants were men with caramel colored skin in their early twenties. Both wore dark colored t-shirts; one of them wore dark jeans, and the other wore baggy shorts. One of the assailants had a messenger bag strapped across his chest and was holding a hammer.

The assailants rummaged through Annette's room and took several belongings, before instructing Annette to lead them to other rooms in the House. Although she was able to convince the assailants to not enter her mother Rosalinda's room, the assailants entered her father Manuel's room and woke him up by slapping him in the face. The assailants threatened to kill Annette and Manuel if they did not cooperate, and took several more belongings from the House. After initially informing them that they would take Annette hostage, the assailants ordered Annette to give them precise directions on how to leave the gated community, left the House through the front door, and made their getaway after stealing Manuel's Ford Expedition vehicle. When the assailants left, Manuel and Annette remained motionless for several minutes before calling the police. The police arrived shortly after, as well as the President of the Board of the Directors of the Caldas community. Days after the incident, Annette provided surveillance tapes from the House to the President of the Board of Directors of the Caldas community. To this date, no suspects have been identified and the vehicle stolen was never found.[2]

---

[2] Although there is no specific sentence in "the Facts" section of the amended complaint stating that Capitol was in charge of security in the Caldas community at the time of the incident, nor that the Homeowners Association and Council of Owners hired Capitol Security, the same can be reasonably inferred from other portions of the amended complaint. The amended complaint's "Nature of the Case" section states, "Capital Security Police, Inc., failed to properly perform its surveillance and security duties of Caldas residential complex during the 11th of August of 2015 . . . ." ECF No. 20, at 2. The section titled "Causes of Action" states, "Co-Defendant Council of Owners [and the Homeowners Association] . . . failed to exhibit reasonable prudence and diligence when hiring Capitol as their security provider." ECF No. 20, at 15, ¶¶ 57– 58.

## II. JUDGMENT ON THE PLEADINGS STANDARD

A motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss." Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (citing Curran v. Cousins, 509 F.3d 36, 43-44 (1st Cir. 2007)). The only difference is that a Rule 12(c) motion "implicates the pleadings as a whole." Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 54–55 (1st Cir. 2006).

The inquiry is whether the allegations, accepted as true, show "a plausible entitlement" to the relief requested. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). Determining whether a complaint makes out a plausible entitlement to relief involves two steps. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12–13 (1st Cir. 2011) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)). First, the court should separate a complaint's factual allegations from any "legal conclusions couched as fact or threadbare recitals of the elements of a cause of action," and disregard the latter. Id. at 12 (quoting Iqbal, 129 S. Ct. at 1949–50) (internal quotations omitted). The court then treats non-conclusory factual allegations as true, "even if seemingly incredible." Id. Second, the court must determine if the factual content, taken as a whole, allows "the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 129 S. Ct. at 1949). Only if it does will the complaint survive a motion to dismiss under Rule 12(b)(6). See id.

## III. ANALYSIS

Article 1802, Puerto Rico's general tort statute, provides, "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann., tit. 31, § 5141. In order to prevail in a general tort claim under Puerto Rico law, a plaintiff must establish the following elements: "(1) evidence of physical or

emotional injury, (2) a negligent or intentional act or omission . . . , and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." Vázquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir. 2007) (citing Tórres v. KMart Corp., 233 F. Supp. 2d 273, 277–78 (D.P.R. 2002)).

The element of negligence has two sub-elements: duty and breach. Vázquez-Filippetti, 504 F.3d at 49. "In most cases, the duty is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances." Id. (citing Ortíz v. Levitt & Sons of P.R., Inc., 1 P.R. Offic. Trans. 407 (1973)). A defendant breaches that duty if he acts or fails to act "in a way that a reasonably prudent person would foresee as creating undue risk." Id. at 49 (citing Pacheco Pietri v. ELA, 1993 P.R.-Eng. 839,817 (1993) (Alonso, J., dissenting)). Thus, a plaintiff must show that the defendant failed to "exercise due diligence to avoid foreseeable risks." Lang v. Corporación de Hoteles, 522 F. Supp. 2d 349, 365-66 (D.P.R. 2007) (quoting Malavé-Félix v. Volvo Car Corp., 946 F.2d 967, 971 (1st Cir. 1991)); see also Vázquez-Filippetti, 504 F.3d at 49.

### A. Capitol Security Police, Inc.

Although the events alleged in the complaint are serious, and there are more than enough allegations concerning the damages Plaintiffs suffered, the factual allegations in the amended complaint do not show a plausible entitlement to relief against the Defendants. The amended complaint's sole reference to any acts or omissions on the part of Capitol Security are the following:

> Defendant Capitol Security Police, Inc., failed to properly perform its surveillance and security duties of Caldas residential complex during the 11th of August of 2015 . . . . Defendant Capitol Security Police's negligence is the proximate cause of the Plaintiffs' unbearable and un-repairable damages, both physically and emotionally. Defendant Capitol Security Police has failed to properly train, discipline, and otherwise control the conduct of its employees and/or security guards.

ECF No. 20, at 2.

While the excerpt above references Capitol Security, these allegations are actually conclusory statements couched as fact, the kind that must be disregarded in evaluating a motion to dismiss. Similarly, the "Causes of Action" section in the amended complaint only alleges, in its pertinent part, that "CAPITOL is liable for Plaintiffs' damages because such damages were caused by the negligence of CAPITOL and its agents . . . who were then and there working within the scope of their employment with CAPITOL." ECF No. 20, ¶ 56. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555). Similarly, a court does not accept as true allegations that "while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 557 n. 5). As Defendants note in their brief, Plaintiffs fail to identify with factual allegations: (1) what acts Capitol Security failed to perform regarding its surveillance and security duties at Caldas; (2) what act or omission Capitol Security incurred that caused them to fail "to properly train, discipline, and otherwise control the conduct of its employees and/or security guards," and; (3) how any negligence on the part of Capitol Security caused the House to be broken into. ECF No. 57, at 5.

Disregarding conclusory allegations—as the court must—the remaining allegations regarding Capitol Security's liability in this case can be summarized as follows: (1) unknown assailants broke into the House in the Caldas community through one of the third floor windows; (2) while inside, they assaulted two of the Plaintiffs, stole multiple items from the House, and even threatened to kidnap one of the Plaintiffs; (3) they left the House after stealing a car and asking for

directions on how to leave the community; and (4) at the time of the incident, Capitol Security was contracted to provide security and surveillance services to the Caldas community. Plaintiffs contend that the mere fact that a break-in occurred in a gated community under the protection of a security company is enough to reasonably infer that the break in was the result of negligence on the part of the security company. But they fail to cite any authority for this proposition. Even if it is true that Caldas has only one designated entrance and exit,[3] it would be speculative to conclude that unidentified assailants, who entered the House through a third floor window, gained access to the community due to Capitol Security's negligence. There are other reasonable explanations for their entry, like for instance that they entered the community through a point that Capitol Security was not obliged to monitor, such as a back fence.[4] Thus, something more than the mere fact of a break in is required to reasonably infer that the break in was caused by Capitol Security's negligence.

Nowhere in the forty-one factual allegations contained in "The Facts" section of the amended complaint do Plaintiffs describe any act or omission by Defendants. Instead, "The Facts" section of the amended complaint asserts in a conclusory manner: "[t]he immediate, direct, and sole cause of the Subject Incident herein above described which resulted in the moral, emotional, and mental damages caused to the Plaintiffs herein, was the Defendants' gross negligence." ECF No. 20, ¶ 55. Plaintiffs counter that this section of the complaint is only meant to provide the Court with "a purely non-legal narrative of the subject incident" and that Defendants are properly identified in the section describing "the legal foundations of the complaint, such as negligence,

---

[3] There are no allegations in the amended complaint regarding the number of entrances or exits in the Caldas community. In Plaintiffs' motion in opposition they indicate that there is only one entrance/exit point. ECF No. 61, at 8, ¶ 14. However, the court only considers facts within the pleadings for a motion for judgment on the pleadings.
[4] The amended complaint's own allegations raise this possibility: Annette "was ordered by the assailants to explain (give precise directions) how to leave the gated community." ECF No. 20, ¶ 47. One would have to wonder why would the assailants ask for directions to exit if they entered through what Plaintiffs argue was the sole point of access to Caldas.

7

failure of duty, and causal relationship." ECF No. 61, at 6–7. However, while the pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

"A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (citing Iqbal, 129 S.Ct. at 1950). This is what Plaintiffs have done here as to liability by stating that Capitol Security was negligent for failing to properly perform its surveillance and security duties and for not properly training and disciplining the conduct of its employees without giving a single factual example of this conduct. Similarly, Plaintiffs claim that Capitol Security's negligence is the proximate cause of the Plaintiffs' injuries but fail to support this with factual allegations.

Plaintiffs emphasize five times in their opposition to the motion for judgment on the pleadings that they are "*possibly*" entitled to relief. ECF No. 61, at 8–10, ¶¶ 12–13, 16–18. While this is true, the factual allegations in a complaint must do more than show the Plaintiffs' right to relief is possible. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (internal citations and quotations omitted).

Plaintiffs argue in their motion in opposition that the Defendants were negligent "in the preservation of the surveillance footage from the urbanization's only entrance/exit point." ECF No. 61, at 8, ¶ 14. However, as the Plaintiffs also stated in their motion in opposition: "the Court

may only consider what is within the pleading when evaluating a Fed. R. Civ. P. Rule 12(b)(6) motion." ECF No. 61, at 8, ¶ 13. For a Rule 12(c) motion, like a Rule 12(b)(6) motion, the court "view[s] the facts contained in the pleadings." Curran v. Cousins, 509 F.3d 36, 43 (1st Cir. 2007). Yet, the Plaintiffs here have made these factual allegations in their motion in opposition, which cannot be considered by the court as it is not a pleading. See Fed. R. Civ. P. 7(a). Moreover, Plaintiffs have not sought the court's leave to amend their complaint for a second time. See Fed. R. Civ. P. 15(a)(2). Thus, these factual allegations brought by the Plaintiffs in their motion in opposition will not be considered.

Additionally, Plaintiffs argue that Capitol Security was negligent in properly training and disciplining their employees because there was a burglary and "Capitol security guards had been warned by Caldas due to their inadequacy to comply with security protocol prior to the subject incident, as well as the knowledge by Capitol . . . of past break-ins." ECF No. 61, at 9, ¶ 16. As stated previously, these facts were not alleged in the amended complaint nor did the Plaintiffs seek to amend their complaint for a second time. Thus, these arguments will not be considered here.

Under a different context, namely that of a 42 U.S.C. § 1983 ("Section 1983") claim for supervisory liability, courts in this district have granted motions to dismiss when plaintiffs have failed to allege sufficient factual allegations in their pleadings regarding failure to train or properly supervise. See López-Ortiz v. Pesquera-López, Civ. No. 13-1839(SEC), 2014 WL 1415111, at *3 (D.P.R. Apr. 11, 2014) (dismissing the plaintiffs' Section 1983 claim under supervisory liability against the police chief when plaintiffs only made "a conclusory averment" about the training of the officers and "threadbare recitals" about how the police chief should have known about the officers propensity for illegal acts.); Gautier-Solorzano v. Vélez-Colón, Civ. No. 10-1777(JP), 2011 WL 5299221, at *4 (D.P.R. Nov. 2, 2011) (granting defendants' motion to dismiss on

plaintiffs' Section 1983 failure to train and supervise claims against a defendant in a commanding or supervisory position when plaintiffs "only presented boilerplate allegations."). While the Plaintiffs in this case bring a claim under Articles 1802 and 1803 of the Puerto Rico Civil Code, these Section 1983 cases are used here as an analogy to show when plaintiffs have failed to meet the required pleading standards.[5]

In <u>Villafaña-Rivera v. Toledo-Dávila</u>, a 12(b)(6) motion to dismiss was granted against the plaintiffs' Section 1983 claim for supervisory liability. Civ. No. 10-2079(PG), 2011 WL 5873072, at *9 (D.P.R. Nov. 21, 2011). In that case, a plaintiff alleged that he was erroneously arrested when he hid from a group of men, who turned out to be police officers, and was subsequently hit by one officer with a nightstick, punched, kicked and choked by another officer, and also assaulted and battered by other officers with their nightsticks, boots, and hands. <u>Id.</u> at *2. The plaintiffs subsequently filed a Section 1983 claim, which included a claim against former Superintendent of the PRPD, Pedro Toledo-Dávila, and other supervisors, for "their failure to train, instruct, supervise, control and discipline officers under their command and establish policies to review the use of deadly force by PRPD officers." <u>Id.</u> at *1. The court held that the plaintiffs' complaint did "not set forth sufficient specific facts" but rather "merely recite[d] the prevailing standards governing supervisory liability." <u>Id.</u> at *9. Thus, plaintiffs' claim of supervisor liability was dismissed. <u>Id.</u>

In <u>Jorge v. Galarza-Soto</u>, a 12(b)(6) motion for failure to state a claim was granted in regards to the plaintiffs' supervisory liability claim for "failure to train, supervise, and discipline" against the sergeant on duty for the PRPD at the time of the incident. 124 F. Supp. 3d 57, 62, 68–

---

[5] No opinion is hereby stated on whether the standards for a Section 1983 claim are more or less stringent than a claim brought under Articles 1802 and 1803 of the Puerto Rico Civil Code. These cases are used to illustrate that a complaint cannot be conclusory in regards to the pleading standards set out by the Supreme Court in <u>Twombly</u> and <u>Iqbal</u>.

70 (D.P.R. 2015). A plaintiff there alleged that he got in a car with two acquaintances to go to the mall, but ended up in a police chase because of the actions of the two acquaintances. Id. at 62–63. He alleged that although he posed no threat to the officers, "he was shot in the back while lying face down in the ground, subdued." Id. at 63. As a result of the gun shot, he is paralyzed and is no longer able to walk. Id. The court noted that the allegations revealed "that Plaintiffs have failed to provide sufficient evidence establishing that the PRPD police officers were inadequately trained" but instead "Plaintiffs simply allege that the training of the PRPD officers was insufficient, without explaining how." Id. at 70. Thus, the court granted the defendants' motion to dismiss plaintiffs' claim of failure to train as to the sergeant. Id. at 71.

Despite the legal distinction between torts and civil rights jurisprudence, both of the previously discussed cases are comparable to the case at hand to the extent that Plaintiffs have not alleged specific facts in regards to Capitol Security's failure to train but rather allege that "Capitol Security Police have failed to properly train, discipline, and otherwise control the conduct of its employees and/or security guards" without explaining how. The same is true for Plaintiffs' claim that Capitol Security "failed to properly perform its surveillance and security duties."

Therefore, Plaintiffs' amended complaint does not contain factual allegations sufficient enough to plausibly suggest that Capitol Security was negligent in the performance of their surveillance and security duties and in properly training, disciplining and otherwise controlling their employees or that there was a causal relationship between the alleged negligent acts and Plaintiffs' injuries.

**B.      Homeowners Association and Council of Owners of Urbanization Caldas**

Plaintiffs allege in their amended complaint that "[d]efendant Homeowners Association of Urbanizacion Caldas, Inc., has failed to exercise the proper and reasonable diligence in the hiring

11

of Capitol Security Police, Inc." ECF No. 20, at 2. Plaintiffs reiterate this claim in their causes of action section: "damages were caused by the negligence of [Caldas, and Council of Owners] . . . who failed to exhibit reasonable prudence and diligence when hiring CAPITOL as their security provider."[6] ECF No. 20, ¶¶ 57–58. However, there are no specific facts within the amended complaint which allege how the Homeowners Association or the Council of Owners failed to exercise the proper reasonable diligence in the hiring process. As the Supreme Court has stated, a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of "further factual enhancement." Iqbal, 556 U.S. at 678 (citing Twombly, 556 U.S. at 557).

The First Circuit described a conclusory allegation as "one which simply asserts a legal conclusion, such as 'I was retaliated against,' not a specific factual allegation, such as "my supervisor threw a book at me," that merely lacks some surrounding context. Rodriguez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico, 743 F.3d 278, 286 (1st Cir. 2014). The Plaintiffs' allegation is that of the former hypothetical of a conclusory allegation because they allege that Caldas did not exercise reasonable diligence in hiring Capitol Security but fail to give a specific factual allegation. Thus, "the allegations are conclusory and not entitled to be assumed true." Iqbal, 556 U.S. at 681 (citing Twombly, 556 U.S. at 557).

Similar to the analysis on Capitol Security, the remaining allegations regarding the Homeowners Association and the Council of Owners liability in this case can be summarized as follows: (1) unknown assailants broke into a house in the Caldas community; (2) they assaulted two of the Plaintiffs, stole various items from the House, and threatened to kidnap one of the

---

[6] The Homeowners Association and the Council of Owners are listed as two separate defendants in the amended complaint. ECF No. 20. In the amended complaint the Homeowners Association is referred to as "CALDAS" and the Council of Owners is referred to as "COUNCIL OF OWNERS." ECF No. 20, ¶¶ 8–9. However, in the Plaintiffs' motion in opposition, the Homeowners Association and the Council of Owners are collectively referred to as "Caldas." ECF No. 61, at 2, ¶ 1. As this section of the opinion deals mainly with arguments made in the Plaintiffs' motion in opposition, the term "Caldas" refers to both the Homeowners Association and the Council of Owners.

Plaintiffs; (3) they demanded precise directions on how to leave the community, stole a car, then left; and (4) at the time of the incident, Capitol Security was hired by Caldas to provide security and surveillance services to the Caldas community. Even when taking these facts as true, they do not create a reasonable inference that Caldas is liable for the misconduct alleged by Plaintiffs. A break-in, even one as terrible as here, does not indicate that those who hired the security company did so negligently. At most, Plaintiffs have shown the mere possibility of negligence, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

In their motion in opposition, Plaintiffs state that evidence was obtained through the discovery process that shows that at the time of renewing Capitol Security's contract Caldas knew "of various break-ins that had occurred under Capitol Security's supposed protection and of Capitol security guards' constant lack of compliance when implementing (or lack thereof) the urbanization's entrance rules." ECF No. 61, at 10, ¶ 19. Moreover, Plaintiffs argue that Caldas has previously "needed to warn Capitol of its employees' deficiency in following entrance protocol and that such absence of diligence had resulted in various unauthorized entries to the urbanization." ECF No. 61, at 10, ¶ 19.[7] Additionally, the Plaintiffs contend in their motion in opposition that there is a causal relationship between Caldas's negligence and the Plaintiffs' damages given that "Caldas had knowledge of Capitol employees' lack of discipline," Caldas had knowledge of previous break-ins under Capitol's watch, and that "Caldas had sent a written warning prior to the Subject Incident to Capitol security guards because of their failure to follow security protocol."

---

[7] As previously discussed, these arguments assume that the assailants actually entered through the official entrance to the urbanization, a premise open to speculation. The amended complaint does not even allege that the assailants arrived to the House in a vehicle.

ECF No. 61, at 12, ¶ 22.  However, even if these statements were taken as true, Plaintiffs do not indicate whether the break-ins occurred in the remote past or recently, how long ago Capitol Security's contract was renewed, whether the written warning was made recently or possibly years before, and how many prior break-ins had occurred in the neighborhood.

Furthermore, as stated above, the Plaintiffs also argued in their motion in opposition that "the Court may only consider what is within the pleading when evaluating a Fed. R. Civ. P. Rule 12(b)(6) motion."  ECF No. 61, at 8, ¶ 13.  For a Rule 12(c) motion, like a Rule 12(b)(6) motion, the court "view[s] the facts contained in the pleadings."  Curran, 509 F.3d at 43.  Yet, the Plaintiffs here have made these factual allegations in their motion in opposition, which cannot be considered by the court as it is not a pleading.  See Fed. R. Civ. P. 7(a); Yankton v. Epps, 652 F. App'x 242, 247 (5th Cir. 2016) ("[A] motion is not a pleading . . . .").  Moreover, Plaintiffs have not sought the court's leave to amend their complaint for a second time.  See Fed. R. Civ. P. 15(a)(2).  Thus, these factual allegations brought by the Plaintiffs in their motion in opposition will not be considered.  Therefore, Caldas has not provided any specific facts in their amended complaint to suggest that the Homeowners Association or the Council of Owners were negligent in hiring Capitol Security.

Therefore, the Plaintiffs' amended complaint does not contain factual allegations sufficient enough to plausibly suggest that the Homeowners Association or the Council of Owners of Caldas was negligent in hiring Capitol Security or that there was a causal relationship between the alleged negligent hiring and Plaintiffs' injuries.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' motions for judgment on the pleadings (ECF Nos. 57; 58) are GRANTED.  All claims against Capitol Security, the Homeowners Association,

and the Council of Owners are hereby DISMISSED WITH PREJUDICE. QBE Seguros ("QBE"), formerly known as QBE Optima Insurance Corporation, "issued an insurance policy on behalf of Capitol, Caldas and Council of Owners." ECF No. 45, at 3, ¶ 11. QBE did not file a motion for judgment on the pleadings and did not move to adopt a motion on the pleadings filed by the other defendants. However, as claims against Capitol Security, the Homeowners Association, and the Council of Owners have all been dismissed, claims against QBE Seguros in their capacity as insurer for the other defendants are likewise DISMISSED WITH PREJUDICE.[8]

IT IS SO ORDERED

In San Juan, Puerto Rico, this 30th day of September, 2017.

                                               s/Marcos E. López
                                               U.S. Magistrate Judge

---

[8] As to QBE Insurance Group of Puerto Rico, Inc., all claims against them in their capacity as insurers for Capitol Security, the Homeowners Association, and the Council of Owners are likewise DISMISSED WITH PREJUDICE.